Nott, J.,
delivered the opinion of the court:
This is an action brought upon the charter-party of the steamer Ben Franklin to recover a balance due, amounting, it is said, to $9,955.
The Assistant Attorney G-eneral has made the same objection to the maintenance of this action which has been taken of late in a number of others, and it is that while the claim presented in the petition is such as is ordinarily settled in an executive department, “ the evidence in the'case does not show that any such application has ever been made to any department of the government., whether with or withdut success, nor any action whatever thereon, 'without which action this court has no lawful jurisdiction of the case.” It is conceded by the claimant that neither the specific demand nor the original contract has ever been before an executive department. The ease presents, therefore, the naked question whether a claimant has a right to bring his action in this court without presenting his claim to the proper accounting officers of the government for payment — whether he may bring his action here with the same freedom that an ordinary creditor can sue an ordinary debtor in a court of law upon a demand arising on contract.
There are also other cases before the court where the parties plaintiff assume a position precisely opposite to that taken by the claimant here, insisting that a claim does not uaccrue” until it has been rejected by an executive department, and that the statute of limitations cannot be set up against them, although more than six years may have elapsed, before suit brought, from the time their services were performed or their *289 goods sold and delivered. It is, therefore, doubly necessary that a comprehensive and settled construction be given to the statutes.
There are three statutory provisions which directly bear upon this point of jurisdiction:
1. The initial, creative act establishing this court, (10 Stat. L., p. 612, § 1,) thus defines it: “ The said court shall hear and determine all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, witli the government of the United States, which may .be suggested to it by a petition filed therein •, and also all claims which may be referred to said court by either house of Congress. It shall be the duty of the claimant in all cases to set forth a full statement of the claim, and of the action thereon in Congress, or by any of the departments, if such action has been had.”
2. The act reconstituting the court provides (12 Stat. L., p. 765, § 10) “That every claim against the United States, cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement of the claim be filed in the court or transmitted to it under the provisions of this act within six years after the claim first accrues.”
3. The same act also provides (§ 7) £l That in all cases of final judgments by said court, or on appeal by the said Supreme Court where the same shall be affirmed in favor of the claimant, the sum due thereby shall be paid out of any general appropriation made by law for the payment and satisfaction of private claims.”
The question seems to be embarrassed with this dilemma: if, on the one hand, a claim need not be presented to the proper department, but may be sued on here, then all the statutory checks and means by which the debts of the nation are examined, classified, and carried to the proper appropriations may be set at naught, and a general appropriation for claims be made to cover every debt of every department; if, on the other hand, a claim must be rejected by the proper executive department before suit can be brought, then the claim does not11 first aoornen under the statute of limitations till it has been rejected, and the statute does not begin to run when the debt becomes due.
It is indeed suggested that inasmuch as all demands on the *290 Treasury must be examined and passed upon wiibin a year from presentation that the diligent claimant will have five years left within which to bring suit; but I do not think that when the statute says sis years it means five; nor that a claimant’s judicial rights are to be affected by the defendant’s administrative agents.
But I do not accept as inevitable the alternatives of this dilemma. There are two less difficult and equally effective constructions to be put upon the statute:
1. The court, by express terms, is clothed with jurisdiction of all actions u founded upon any contract, express or implied,? Such is the provision of the initial act of 1855, (§ 1.) But when we come to the provision for the payment of our judgments, it is given exclusively by the act of 1863, (§ 7,) and the relief is limited to uany general appropriation made by law for the payment and satisfaction of private claims? If these judgments when paid were carried to the specific appropriations made for the respective departments, as is the case with claims sent into the court by a Secretary under the Act 25th June, 1868, (15 Stat. L., p. 75,) there would be less reason for making a claimant go to the proper department in the first instance. But an appropriation for the payment of “private claims” means an appropriation for claims which the executive departments have rejected, or of which they have no jurisdiction. The appropriation is for debts which were not to be paid out of the specific appropriations. Therefore, though the court may entertain jurisdiction under the one statute before a claim has been presented to the proper department for payment out of the proper appropriation, yet the court must exact this before giving relief out of the general appropriation, under the other statute. The practical effect of such a construction will be that the claimant who, through ignorance or oversight, has failed to present his claim for executive action before bringing his suit, may still do so, pendente lite. If the claim be allowed the suit will be discontinued; if it be rejected the government will gain all the advantage of the executive investigation. Nothing will be gained or lost by either party through having it rejected at one time instead of another.
2. If this construction of the statutes cannot be maintained, I still think it will be sufficient for a claimant to present his claim to the proper department and bring suit without waiting *291 for its rejection, alleging in bis petition that no action bas been taken and no decision made. His rights will tben depend on bis own acts, and not on tbe acts of tbe adverse party’s clerks and agents.
Either of these constructions will avoid tbe objection well urged by counsel, that a claimant while waiting for a department to act might lose bis right of action; either will save this court from going to the opposite extreme and holding that a claim fifty years old may be prosecuted notwithstanding the statute of limitations, if it has only been rejected by a department within six years; either will save to the government the advantages of having a claim examined by the department properly responsible for its allowance.
A majority of the court incline to the belief that the presentation of a claim to an executive department is not a prerequisite to jurisdiction. They think, also, that, the point being new, this case should be remanded, with leave to the claimant, after he shall have presented his claim to the proper department, to amend his petition and make the necessary proof. Before doing so, however, we have determined to look into the merits, so as to save to the party needless expenseand delay if our conclusion on the merits should be adverse.
Tbe action is brought upon a charter-party entered into at the city of Louisville on the 3d of March, 1863, between Captain John H. Ferry, assistant quartermaster, and one T. C. Sweeney, the owner of the steamer Ben. Franklin. The rate agreed upon was $175 a day. No definite time was named in the charter, and the defendants were at liberty to discharge the steamer at any place, allowing a reasonable time for her return to Louisville.
The claimant subsequently complained of the rate allowed, and the quartermaster at Louisville, by an endorsement on the application, directed that the boat be allowed $200 per day. She remained apparently under the control of Captain Ferry, and was borne upon his returns for the months of March and April, but was, in fact, paid at the rate of $200 per day only up to and including the 20th March, 1863.
The steamer next appears upon the Mississippi, under the control of Captain Charles Parsons, an assistant quartermaster at St. Louis. In what manner or by what authority she was transferred from the quartermaster at Louisville to the quarter *292 master at St. Louis does not appear. On tbe 15th. September, 1803, her account was stated by Captain Parsons from March 21st to July 31st, at $140 a day, and this was paid and receipted for on the 22d of October following. Accounts for subsequent services were also stated and paid and receipted for, and these accounts and receipts do not refer to any charter-party.
The agent of the owner, it appears, remonstrated at the rate allowed, and on the- 19th December a settlement is reported on the quartermaster’s accounts, for service from the 21st March to the 31st August, at $5 per day, and the amount allowed thus in settlement was also receipted for by the agent of the owner as “in full of the above account.”
There are two distinctive facts which separate this case from those in which a reduction has been ordered by the Quartermaster General and a receipt been given by the owners. The first is that the boat appears for several months in service in another military department, and neither the accounts stated by the quartermaster nor the receipts given by the owner refer to the original charter-party. That charter-party was for no fixed period, and might have been terminated at any moment. The quartermaster at St. Louis does not seem to have been aware of the charter-party, and the owner does not- seem to have relied upon it, and the agent who collected the boat’s accounts does not seem to have presented it. These circumstances imply that when the steamer passed from one military department to another the charter Avas rescinded. The second distinctive fact is, that after the rate had been fixed at $140 a day, and after this had been paid by the quartermaster and received by the claimant, and after the boat had left the service, a settlement was made whereby the defendants paid $5 a day for the past services of the boat, in accordance Avith an agreement made between the quartermaster and the claimant’s agent.
Illegal and arbitrary exactions cannot be upheld by a court of justice, but anything which looks like the final compromise of a doubtful case should always be maintained. In this case there is the undetermined period of the charter, the new field in which the boat is found, the absence of all reference to the contract in the accounts which passed between the parties, and the still more significant fact that the owner never appealed to the Quartermaster General, and, until this suit was brought, never questioned the finality of his agent’s settlement. Upon this evi *293 dence we think this settlement should not be disturbed, and that leave to present the case to the proper department should not be granted.
The judgment of the court is that the petition be dismissed.